STATE, Respondent, v. KORT, Appellant.

*No. State 54. Argued February 2, 1972.—Decided March 2, 1972.*
(Also reported in 194 N. W. 2d 682.)

130

For the appellant there were briefs and oral argument by *Jerome A. Maeder* of Wausau.

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J.    Like an old-fashioned milking stool, this criminal conviction rests upon three legs: (1) The statute setting the compensation for town supervisors; [1] (2) a 1915 decision of this court holding: "Expenses are not allowed to town supervisors by any statute"; [2] and (3) the statute making it a criminal offense for a public officer to do an act "which he knows is in excess of his lawful authority or which he knows . . . is forbidden by law." [3]  For the conviction to stand, each

[1] Sec. 60.60, Stats., providing: "(1) The compensation of town supervisors and town clerks shall be fixed by the annual town meeting at not less than $5 nor more than $12 per day. . . . In lieu of a per diem compensation, the annual town meeting may establish an annual salary for town supervisor . . . ."

[2] *State v. Cleveland* (1915), 161 Wis. 457, 459, 152 N. W. 819, 154 N. W. 980.

[3] Sec. 946.12, Stats., providing: "**Misconduct in public office.** Any public officer or public employe who does any of the following may be fined not more than $500 or imprisoned not more than one year or both:

leg of the stool must bear its share of the weight. They do not, and the conviction falls.

Fitting together the two statutes and one court decision to sustain this conviction would require holding that reimbursement for out-of-pocket expenses such as mileage, meals and overnight lodging is additional "compensation" for a public official necessarily incurring such expenses as a part of his performance of his official duties. Sec. 60.60, Stats., relates only to the "compensation" of town supervisors, and, unless reimbursement for actual expenses incurred is additional "compensation," the statute does not apply to vouchers submitted for mileage, meals and lodging covering trips on town business.

It is the position of the state that sec. 60.60 (1), Stats., "forbade" the town of Weston from paying the claims for reimbursement. In its instructions to the jury, the trial court stated: "You are instructed that a public official's right to compensation is purely statutory," proceeding then to set forth the provisions of sec. 60.60 (1), governing the fixing of compensation of town supervisors. So the case went to the jury and comes to us on appeal on the basis that the statute fixing compensation bars any additional reimbursement for expenses. The source of this construction of this statute is a 1915 case in which this court did say: "A public official's right to compensation is purely statutory; what the statute gives he receives, but not more. . . . Moreover, sec. 850 [predecessor to sec. 60.60 (1)] of the Wisconsin statutes expressly fixes their compensation at the sum named by the annual town meeting, or in default of action by the town meeting at the sum of $3 per day. . . ." [4] Such ap-

---

". . .

"(2) In his capacity as such officer or employe, does an act which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity."

[4] *State v. Cleveland, supra,* at page 459.

parent equating of salary and reimbursement for expenses is inconsistent with an earlier 1912 decision in which this court held that an allowance for expenses to Milwaukee circuit judges did not violate a constitutional limitation upon raising salaries of judges in midterm,[5] holding that: ". . . The 'compensation' of other circuit judges did not include the reimbursements provided for by ch. 263, Laws of 1889, because to hold otherwise would give this word a meaning different from its manifest meaning. . . ." [6] At best these two decisions, read together, made fish out of town board supervisors, fowl out of members of the judiciary. We have no hesitancy in finding the proper construction and greater wisdom in the *Halsey Case,* and withdrawing the language in *Cleveland* that appears to make "compensation" synonymous with "expenses."

Holding that sec. 60.60 (1), Stats., does not make illegal reimbursement for out-of-pocket expenses requires reversal because it removes the element of knowledge in advance from the case against the defendant. The only testimony on this point was the disputed testimony of the town clerk that she had told the supervisors that seeking reimbursement for expenses was illegal under sec. 60.60 (1). Our holding that expenses are not reached by the

[5] *Milwaukee County v. Halsey* (1912), 149 Wis. 82, 85–87, 136 N. W. 139. *See also:* 36 Op. Atty. Gen. (1947), page 276: ". . . [T]he amounts appropriated . . . do not constitute compensation, but are to reimburse the members of the committee for out of pocket expense incurred by them in the performance of their duties. . . ."

[6] *Id.* at pages 86, 87. On the distinction between compensation or salary and expenses, *see also: Hoppe v. State* (1970), 78 Wash. 2d 164, 469 Pac. 2d 909, 912; *Spearman v. Williams* (Okla. 1966), 415 Pac. 2d 597, 601, 602; *Earhart v. Frohmiller* (1947), 65 Ariz. 221, 178 Pac. 2d 436, 438; *Kirkwood v. Soto* (1891), 87 Cal. 394, 25 Pac. 488, 489; *Clark v. Board of County Commissioners* (1936), 64 S. D. 417, 267 N. W. 138, 140; *Russ v. Commonwealth* (1905), 210 Pa. 544, 60 Atl. 169, 174.

compensation statute removes the element of "does an act which he knows" to be forbidden by sec. 60.60 (1) from the case against this defendant on this record. There remains, but only on the question of dismissal or retrial, the question of whether such reimbursement is, nonetheless, in the language of sec. 946.12, one that "is in excess of his lawful authority." For the *Cleveland Case*, following references to the compensation-fixing statute, also states: ". . . No provision is made for traveling expenses, and this means that, like other officials in that situation, they [town supervisors] must defray their own expenses of this nature." [7]

The years separating 1915 and today have seen a change in the nature, scope and reach of the public responsibilities involved in serving as a town board member, or, for that matter, as village, city or county, or state official. Then it was rare indeed for occasions to arise when a town supervisor was obliged or called upon to go beyond the town limits in performing his duties. Today (as the trips made by defendant to a convention of town officials, to a seminar on road maintenance, to have repaired or to pick up purchased town equipment illustrate) the geographical limits of the governmental subdivision are often crossed in the performance of public duty. Statutes then existing and subsequently enacted relating to towns and town officers are to be viewed in the light of the changed situation.

In the light of the operation of a town government in the 70's, we turn to the Wisconsin statutes establishing and granting certain authorizations to town board members. The basic statute on corporate powers provides that: "Each organized town is a body corporate and empowered . . . to make all contracts necessary and convenient for the exercise of its corporate powers . . . ." [8]

[7] *State v. Cleveland, supra,* at page 459.
[8] Sec. 60.01, Stats.

More specifically, the statutes require the town boards to meet ". . . to audit and settle all charges against the town . . . ." [9] As a corollary to such authority the qualified electors at any annual town meeting ". . . shall have power . . . [t]o raise money for . . . defraying all other charges and expenses of the town . . . ." [10] Additionally, town boards are placed in charge of town affairs, the applicable statute providing that the town board members are ". . . To have charge of all the affairs of the town not by law committed to other officers." [11]  While it would be preferable to have the right to reimbursement and appropriate rates established by action of the electors at an annual town meeting, we cannot hold that these statutes preclude a town board from approving a voucher for actual out-of-pocket expenses incurred by a board member in the performance of official town business. Particularly where a criminal prosecution is involved, we do not hold that such reimbursement constitutes doing an act "in excess of . . . lawful authority." It is axiomatic to state that every right involves a duty; it is equally true that every duty assigned implies an authority delegated to handle the responsibility imposed. Authority to reimburse derives from the responsibility delegated to handle and administer the affairs of the town.

Up to this point we have discussed only the inapplicability of the misconduct in public office statute to a town board member securing reimbursement for actual expenses for mileage, meals and lodging while conducting official town business. However, here the defendant also sought and secured reimbursement for what is termed "lost wages," meaning payments by the town for the extra hours he had to work to make up time missed at his regular place of private employment. Can the retrieval of such "lost wages" be called no more than reimburse-

[9] Sec. 60.32, Stats.
[10] Sec. 60.18 (1), Stats.
[11] Sec. 60.29 (1), Stats.

ment for out-of-pocket expenses incurred by defendant in the performance of his public duties? This item of "lost wages," it appears to us, clearly goes a step beyond reimbursement for expenses such as mileage, meals or lodging. The question is close, and arguments can be made on both sides of it, but we do not on this record feel we can hold that the defendant is entitled to claim or retain payments made to him for wages in a sense not received by him from his private employer, at least not until he did the work for which the wages were payable. He was being paid by the town for the work he did or time he put in for the town as town board chairman. While he was working for the town, he was not entitled to receive from the town what he would have earned if he had been working somewhere else for someone else during the same time period. Even if this is not "compensation," it goes beyond what the town board, without express statutory authorization or advance authorization by the electors at a town meeting is entitled to pay as reimbursable expenses. As to this case, no problem is presented for there is no way in which this defendant could be chargeable with advance knowledge as to what we now decide, even though it makes unfounded his opinion, stated at the time of trial, that he considered his claim for lost wages a proper item of expense. As to acts in excess of authority, as in the case of acts forbidden by law, there must be fair notice that conduct contemplated is illegal or improper.[12] He has no such notice. Even in *Cleveland,* upon which the prosecution relied, where this court found a town board exceeded its authority, no mention was made of any possi-

---

[12] "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss* (1954), 347 U. S. 612, 617, 618, 74 Sup. Ct. 808, 98 L. Ed. 989.

ble criminal act involved in submitting the bill for expenses. However, our holding here does mean that the defendant was not entitled to receive and is not entitled to retain payments made to him during 1966–1969 for wages lost, but the claim of the town to repayment must be enforced in civil, not criminal, proceedings.

At the trial an offer of proof was made by the defense to establish that city councilmen in an adjoining municipality had for years been paid "lost wages" when on city business out of town. (The city had a resolution so authorizing, dated April 9, 1956.) While offered on the issue of good faith, the tender of proof was properly rejected because of its limited probative value. It is here noted solely to make clear that advance authorization of reimbursement for wages lost by reason of performing public duties is not only preferred, but a prerequisite to such reimbursement. Even as to the items of mileage, meals and lodging, it is strongly urged that electors at annual town meetings set policies and guidelines for reimbursable expenses so that disputes and civil litigation as to the amount or reasonableness of claims to reimbursement, even for clearly out-of-pocket expenses on authorized travel, can be avoided.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint on its merits.