NORANDA EXPLORATION, INC., a Delaware corporation,
Plaintiff-Respondent,

v.

M.E. OSTROM, State Geologist, Bronson C. La Follette,
Attorney General, and Carroll D. Besadny, Secre-
tary of Department of Natural Resources,
Defendants-Appellants.†

Court of Appeals

*No. 81–236. Argued November 19, 1981.—Decided March 23, 1982.*
(Also reported in 320 N.W.2d 530.)

† Petition to review granted.

For the appellants the cause was argued by *Raymond M. Roder,* assistant attorney general, with whom on briefs was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Korth, Rodd, Mouw, Johnson & Mustacci, S.C., and Sommer & Schroeder, S.C.,* of Rhinelander, and oral argument by *Richard E. Sommer.*

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J. The state appeals a judgment declaring sec. 107.15, Stats., unconstitutional and enjoining the state's enforcement of the statute. Section 107.15 requires companies such as Noranda Exploration, Inc., to provide the state geologist with geologic data they acquire in the course of exploring for minerals within the state. The trial court concluded that the statute deprived Noranda of its property without due process of law and impaired Noranda's contract obligations to property owners whose land Noranda was exploring. We conclude

that sec. 107.15 is a valid exercise of the state's police power that does not take property without due process of law. We also conclude that as a valid exercise of the police power, sec. 107.15 may constitutionally attach subsequent conditions to the contracts it affects. We therefore reverse the judgment of the trial court and dissolve the injunction barring the enforcement of the statute.

Noranda is one of a number of companies that explore for minerals in northern Wisconsin. In the initial phases of exploration, aerial and ground electromagnetic surveys are used to locate subsurface mineral deposits. Once mineral deposits are located, the explorer drills exploration holes. These exploration holes yield detailed geologic information about the location, size, and quality of mineral deposits.[1] From 1972 through 1979, Noranda drilled 192 exploratory holes in Wisconsin.

In 1977, the Wisconsin legislature enacted comprehensive laws regulating mineral exploration and development within the state.[2] Section 144.832(2), Stats., requires Department of Natural Resources licensing of metallic mineral explorers. Once a licensee drills an exploration hole, sec. 107.15 requires the licensee to provide the state geologist with data obtained from the exploration hole, including a "noninterpretive lithologic description[3] of all portions of core samples and, of all

[1] The material obtained from exploration holes generally includes pieces of rock, which are often referred to as "drill cuttings," "drill core," or simply "core." These samples can be used to prepare "lithologic logs," which describe the nature of the rock layers through which the drill has passed.

[2] The Metallic Mining Reclamation Act, 1973 Wis. Laws c. 318, 1977 Wis. Laws c. 421, created §§ 144.80 to 144.94. Other statutes regulating mining and metal recovery are contained in ch. 107, Stats.

[3] A "noninterpretive lithologic description" is, for all practical purposes, the same as a "lithologic log." *See* note 1, *supra*. It is "noninterpretive" in the sense that it does not provide informa-

drill cuttings if any noninterpretive lithologic descriptions of drill cuttings are prepared, excluding mention of metalliferous minerals found in the samples and cuttings." Section 107.15(4)(a)7, Stats. This information is to be submitted by the explorer on or before July 1 of the year following each year in which the licensee obtains rock, core, or drill cutting samples. Section 107.-15(4)(a), Stats.

In addition to the noninterpretive description required to be submitted under sec. 107.15(4)(a), the state geologist may require licensees to submit "representative and reasonable quantities of soil, rock, core or drill cutting samples . . . ." Section 107.15(4)(b), Stats. The submission of such samples is to take place "no later than July 1 of the year following the year in which an exploration lease for the site where the samples were obtained has expired, but release shall be no later than 10 years after the commencement of drilling at the site." Section 107.15(4)(b), Stats.

The statute provides that exploration data, including lithologic descriptions, core samples, and drill cuttings, "shall be kept confidential until December 31 of the 3rd year following the date of submission." Section 107.15 (4)(f), Stats. Subsection (6)(c) imposes penalties upon those who knowingly or wilfully violate the statute's confidentiality requirements, but permits the state geologist to provide the DNR and the Department of Revenue with confidential information. Both the DNR and DOR are required to establish procedures to maintain the confidentiality of the information they receive. Section 107.15(6)(c)2, Stats.

Noranda's primary challenge to the constitutionality of sec. 107.15 is premised upon its assertion that the geologic data it obtains from exploration holes is a

tion as to the origin of the rock layers it describes and therefore does not, by itself, indicate the presence of metallic minerals.

trade secret that is of value to its competitors. After the state is no longer required to keep the data confidential, Noranda contends that it will be acquired by competing mineral exploration companies and will enable them to acquire exploration and mineral development rights in property adjacent to properties that Noranda has already explored. Noranda argues that sec. 107.15 is an unreasonable, and therefore unconstitutional, exercise of the state's police power and allows the taking of its property without compensation, in violation of amendments V and XIV of the United States Constitution and article I, section 13 of the Wisconsin Constitution.[4]

We conclude that sec. 107.15 is a valid exercise of the state's police power. To be a valid exercise of the state's police power, a statute must have a reasonable and rational relationship to the furtherance of the public welfare. *State v. Jackman,* 60 Wis. 2d 700, 704, 211 N.W.2d 480, 484 (1973). In determining whether sec. 107.15 is a valid exercise of the police power, our function is not to weigh the evidence in the traditional sense but only to determine whether there is any reasonable basis upon which the legislature might have acted. *Watchmaking Examining Board v. Husar,* 49 Wis. 2d 526, 530, 182 N.W.2d 257, 258 (1971). Fairly debatable questions as to the reasonableness, wisdom, and propriety of the legislation are to be determined by the legislature, not the judiciary. *State v. Dried Milk Products Co-op.,* 16 Wis.

---

[4] U.S. Const. amend. V provides in part: "No person shall . . . be deprived of life, liberty, or property, without due process of law, nor shall private property be taken for public use without just compensation."

U.S. Const. amend. XIV provides in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

Wis. Const., art. I, § 13 provides: "The property of no person shall be taken for public use without just compensation."

2d 357, 363, 114 N.W.2d 412, 415 (1962). Section 107.15 is presumed to be constitutional, and it is Noranda's burden to prove, beyond a reasonable doubt, that it is not. *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973).

The evidence presented at trial shows that sec. 107.15 has a reasonable and rational relationship to the furtherance of the public welfare. The geologic data that Noranda and other explorers must submit will provide state agencies, and the public, with information useful for a variety of environmental and economic purposes. The chief environmental purpose is the prevention of ground water pollution. The data will assist the state in regulating mining operations and in locating appropriate sites for solid waste and nuclear waste disposal facilities. The economic purposes include determining whether certain areas are suitable for heavy construction projects, locating road construction materials, enabling the DOR to accurately determine the value of mineral lands for tax assessment purposes, ensuring that mineral lands are put to their best use, and informing property owners of the value of minerals beneath their land. The use of the police power to further such purposes is beyond dispute. *See Just v. Marinette County,* 56 Wis. 2d 7, 18, 201 N.W.2d 761, 768 (1972); *Husar,* 49 Wis. 2d at 530, 182 N.W.2d at 258.

The trial court, however, concluded that sec. 107.15 was not a valid exercise of the police power because the state geologist could acquire all of the information it needed from sources other than mining companies, such as well drillers. This conclusion ignores the fact that the data obtained from mineral exploration holes is qualitatively and quantitatively different than the data available from other sources. Moreover, nothing in the record indicates that data from other sources would be

of any use in enabling the state to accurately determine the value of mineral lands for tax assessment purposes or in informing property owners of the value of minerals beneath their land.

As a valid exercise of the state's police power, sec. 107.15 cannot be found to effect an unconstitutional taking of property unless it renders Noranda's property useless for all practical purposes. *See Buhler v. Racine County*, 33 Wis. 2d 137, 143, 146 N.W.2d 403, 406 (1966); *see also Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 130–31 (1978). A diminution in the property's value, standing alone, does not establish an unconstitutional taking. *Buhler*, 33 Wis. 2d at 143, 146 N.W.2d at 406.

We conclude that the record simply does not support a finding that the reporting requirements of sec. 107.15 will render the disclosed information useless to Noranda for all practical purposes. The noninterpretive information Noranda is required to submit must be kept confidential for three years following the year in which it is obtained. Actual rock or drill cutting samples, if they are in fact required to be submitted, must also be kept confidential for three years and, depending upon when they are required to be submitted, may not be available to the public until thirteen years[5] after they were first acquired. During the periods in which the information is not available to the public, Noranda necessarily retains

---

[5] As previously noted, § 107.15(4)(b), Stats., does not require the submission of rock or core samples until the year "following the year in which an exploration lease for the site where the samples were obtained has expired, but . . . no later than 10 years after the commencement of drilling at the site." When § 107.15's mandatory 3-year period of confidentiality is added to the maximum period of time an explorer may withhold samples (10 years), the samples will not be available to the public for 13 years after the year in which they were first obtained.

a competitive advantage over other mineral explorers. The evidence, at most, supports only a finding that the eventual public disclosure of Noranda's data may diminish the competitive advantage Noranda possessed prior to the statute's enactment. Such a diminution does not render the information useless.

It must also be emphasized that sec. 107.15 operates prospectively; it does not require Noranda to disclose any data it acquired prior to the statute's effective date, July 3, 1978. Noranda's prior right to maintain complete control over its exploration data, and its reliance on that right, does not give it a vested right in data it acquires after the statute's effective date. *Cf. Buhler*, 33 Wis. 2d at 148, 146 N.W.2d at 408 (property owners have no vested right against rezoning because of their reliance upon original zoning requirements). As in *Buhler*, to conclude otherwise would effectively deprive the state of any authority to exercise its police power to meet changing circumstances.

Noranda next contends that sec. 107.15 will impair its contract with Consolidated Papers, Inc., by which Noranda acquired mineral exploration rights on Consolidated's land.[6] Among its other provisions, the contract

---

[6] The parties have argued this issue only with respect to Noranda's contract with Consolidated and do not cite us to any other contracts containing similar confidentiality provisions. The trial court's conclusions of law, however, state that § 107.15 would impair similar agreements between Noranda and other property owners. Assuming other agreements do in fact contain similar confidentiality provisions, these contracts are subject to the same analysis we apply to the Consolidated contract. We also question Noranda's standing to raise this issue. The contract provisions that Noranda claims are impaired state only that Noranda is to provide reports, maps, and data to Consolidated and that Consolidated is to keep the data confidential. The data becomes the property of Consolidated. The contract makes no mention of Noranda's obligation to maintain the confidentiality of such data and although Consolidated may have reasonably expected Noranda to

provided for the confidential treatment of exploration data. The trial court concluded that the reporting requirements of sec. 107.15 impaired Noranda's contractual obligations and that because sec. 107.15 was an unreasonable and unnecessary exercise of the state's police power, it violated the contract clauses of the United States and Wisconsin Constitutions.[7]

Our conclusion that sec. 107.15 is a reasonable exercise of the state's police power requires us to reject the conclusion that it unconstitutionally impaired Noranda's contract rights. Contracts "will be subject to a law of the state enacted after the bargain if it is in the public interest, under the police power, to attach subsequent conditions to the contract." *State ex rel. Building Owners & Managers Ass'n of Milwaukee, Inc. v. Adamany,* 64 Wis. 2d 280, 294, 219 N.W.2d 274, 281 (1974). Accordingly, contractual provisions prohibiting Noranda's disclosure of geologic data present no constitutional bar to the statute's enforcement.

Noranda raises two additional challenges to the statute's constitutionality. First, it contends that the penalty provisions of sec. 107.15[8] will violate its right to

maintain the confidentiality of its exploratory data, it is Consolidated's, not Noranda's interests that would be impaired by the reporting requirements of § 107.15.

[7] U.S. Const. art. I, § 10, provides in part: "no state shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts . . . ."

Wis. Const. art. I, § 12, provides: "no bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed . . . ."

[8] Section 107.15(6)(a) provides that "[a]ny person who knowingly or wilfully fails to comply with the reporting requirements of this section shall be fined up to $50,000." Section 107.15(6)(b) provides that "[i]n addition to the penalty prescribed in par. (a), any person who fails to submit information which is required to be submitted under this section shall forfeit $10 for each day after

procedural due process because they do not contain mechanisms for notice and hearing prior to the imposition of penalties. Noranda also claims that the statute's confidentiality provisions treat the data obtained by explorers differently than the data obtained by prospectors and that this differing treatment denies explorers equal protection of law.

We decline to consider Noranda's procedural due process argument. This court is not to anticipate questions of constitutional law in advance of the necessity of deciding them. *Cohen v. Towne Realty, Inc.*, 54 Wis. 2d 1, 4–5, 194 N.W.2d 298, 300 (1972). We have no reason to anticipate that Noranda will be denied procedural due process if the state is required to proceed with enforcement of sec. 107.15. Noranda's equal protection argument fails because it has not shown that it is treated differently than other explorers. Different treatment for a different class, such as prospectors, does not deny equal protection to Noranda as an explorer.

*By the Court.*—Judgment reversed.

the date or which the information should have been submitted until the information is submitted."